## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHRISTINE WHEELER
 and DOUGLAS WHEELER,

     Plaintiffs,                      Case No. 19-cv-08273

v.                                 Honorable John J. Tharp, Jr.

C. R. BARD, INC.,

     Defendant.

_____

### DEFENDANT C. R. BARD, INC.'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road, N.E., 25th Floor
Atlanta, Georgia 30305
(678) 553-2100

**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400

*Attorneys for Defendant C. R. Bard, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 1

APPLICABLE LAW ............................................................................................................ 3

SUMMARY JUDGMENT STANDARD ............................................................................. 4

ARGUMENT AND AUTHORITIES .................................................................................... 5

     I.     BARD IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFFS' CLAIMS BECAUSE THEY ARE TIME-BARRED .................... 5

     II.    BARD IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFFS' CLAIMS DUE TO LACK OF A TRIABLE ISSUE OF CAUSATION ......................................................................................... 8

     III.   BARD IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FAILURE TO WARN CLAIMS BECAUSE MRS. WHEELER'S IMPLANTING PHYSICIAN KNEW OF THE RISKS AND COMPLICATIONS ATTENDANT WITH THE IMPLANTATION OF MESH PRODUCTS. ...................................................................... 11

     IV.   PLAINTIFFS DO NOT OPPOSE THE ENTRY OF SUMMARY JUDGMENT ON THEIR CLAIMS FOR (1) BREACH OF EXPRESS AND IMPLIED WARRANTY, (2) MANUFACTURING DEFECT, (3) NEGLIGENT MARKETING, LABELING, PACKAGING, AND SELLING, AND (4) MR. WHEELER'S LOST PROFITS ................................ 12

     V.    MRS. WHEELER'S LOST PROFITS CLAIM IS PROCEDURALLY BARRED AND FAILS DUE TO LACK OF EVIDENCE. ................................ 13

     VI.   PLAINTIFFS' PUNITIVE DAMAGES CLAIM FAILS AS A MATTER OF LAW ............................................................................................. 14

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...........................................................................................5

*Bonte v. U.S. Bank, N.A.*,
   624 F.3d 461 (7th Cir. 2010) .......................................................................13, 14

*Brown v. Burlington N. Santa Fe Ry. Co.*,
   765 F.3d 765 (7th Cir. 2014) ...........................................................................10

*Conley v. Vill. Of Bedford Park*,
   215 F.3d 703 (7th Cir. 2000) .............................................................................5

*Grant v. Chemrex, Inc.*,
   No. 93 C 0350, 1997 WL 223071 (N.D. Ill. Apr. 28, 1997)...................................9

*Guy v. Duff & Phelps, Inc.*,
   628 F. Supp. 252 (N.D. Ill. 1985) ....................................................................14

*Hagen v. Richardson-Merrell, Inc.*,
   697 F. Supp. 334 (N.D. Ill. 1988) ....................................................................15

*Kirksey v. R.J. Reynolds Tobacco Co.*,
   168 F.3d 1039 (7th Cir. 1999) .........................................................................13

*Kremers v. Coca-Cola Co.*,
   712 F. Supp. 2d 759 (S.D. Ill. 2010)..................................................................6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..........................................................................................4

*Mecham v. C. R. Bard, Inc.*,
   No. 2:19-cv-00750-JNP, 2020 U.S. Dist. LEXIS 93671 (D. Utah May 27,
   2020) ................................................................................................................7, 8

*Moser v. Ind. Dept. of Corr.*,
   406 F.3d 895 (7th Cir. 2005) ............................................................................4

*Orso v. Bayer Corp.*,
   No. 04 C 0114, 2009 WL 249235 (N.D. Ill. Feb. 2, 2009)...................................8

*Phongsa v. JPMorgan Chase Bank, N.A.*,
   13 C 5573, 2014 WL 2510203 (N.D. Ill. June 3, 2014) .....................................13

*Pirelli Armstrong Tire Corp. Retiree Med Benefits Trust v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ..........................................................................13

*Schaefer v. Universal Scaffolding & Equip., LLC*,
   839 F.3d 599 (7th Cir. 2016) ............................................................................8

*Sherer-Smith v. C. R. Bard, Inc.*,
    No. 19-CV-903-JDP, 2020 WL 1470962 (W.D. Wis. Mar. 26, 2020)....................................10

*Show v. Ford Motor Co.*,
    697 F. Supp. 2d 975 (N.D. Ill. 2010), aff'd, 659 F.3d 584 (7th Cir. 2011) ..............................9

*Sweat v. Peabody Coal Co.*,
    94 F.3d 301 (7th Cir. 1996) ........................................................................................................5

*TAS Distrib. Co. v. Cummins Engine Co.*,
    491 F.3d 625 (7th Cir. 2007) ....................................................................................................14

*Turnell v. Centimark Corp.*,
    796 F.3d 656 (7th Cir. 2015) ......................................................................................................4

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
    977 F. Supp. 2d 885 (N.D. Ill. 2013) ........................................................................................3

**State Cases**

*Abrams v. City of Chicago*,
    211 Ill. 2d 251 (2004) ................................................................................................................8

*Bermudez v. Martinez Trucking*,
    343 Ill. App. 3d 25 (1st Dist. 2003) ..........................................................................................8

*Caywood v. Gossett*,
    382 Ill. App. 3d 124 (1st Dist. 2008) ........................................................................................6

*Golla v. Gen. Motors Corp.*,
    167 Ill. 2d 353 (1995) ............................................................................................................5, 6

*Hansen v. Baxter Healthcare Corp.*,
    198 Ill. 2d 420 (2002) ........................................................................................................11, 12

*Kelsay v. Motorola, Inc.*,
    74 Ill. 2d 172 (1978) ................................................................................................................15

*Kemner v. Monsanto Co.*,
    217 Ill. App. 3d 188 (5th Dist. 1991)......................................................................................14

*Knox Coll. v. Celotex Corp.*,
    88 Ill. 2d 407 (1981) ..................................................................................................................6

*Lowe v. Ford Motor Co.*,
    313 Ill. App. 3d 418 (1st Dist. 2000) ........................................................................................5

*Martin v. Ortho Pharm. Corp.*,
    169 Ill. 2d 234 (1996) ..............................................................................................................11

*Mitsias v. I-Flow Corp.*,
    2011 IL App (1st) 101126......................................................................................................6, 7

*Proctor v. Davis*,
    291 Ill. App. 3d 265 (1st Dist. 1997) ......................................................................................11

*Ramirez v. City of Chicago*,
  2019 IL App (1st) 180841.................................................................................................15

*Salerno v. Innovative Surveillance Tech., Inc.*,
  402 Ill. App. 3d 490 (1st Dist. 2010)................................................................................9

*Tonchen v. All-Steel Equip., Inc.*,
  13 Ill. App. 3d 454 (2d Dist. 1973)..................................................................................14

*Townsend v. Sears, Roebuck & Co.*,
  227 Ill. 2d 147 (2007)........................................................................................................4

**State Statutes**

735 ILCS 5/13-202 ..............................................................................................................5

**Rules**

Fed. R. Civ. P. 56(c) ...........................................................................................................4

## INTRODUCTION

Plaintiff Christine Wheeler ("Plaintiff" or "Mrs. Wheeler") had three different pelvic mesh products implanted to treat her urinary problems, only one of which Plaintiff alleges was manufactured by Bard. After settling or otherwise resolving her claims against seven other defendants she named in her Complaint, Plaintiff and her husband, Douglas Wheeler ("Mr. Wheeler" and together with Mrs. Wheeler, "Plaintiffs") now pursue various products liability claims only against Bard seeking damages for injuries allegedly caused by dangerous propensities of her mesh products. Not only are all of Plaintiffs' claims time-barred, as Plaintiffs failed to file their Complaint within the applicable two-year statute of limitation, but Plaintiffs also cannot establish that Bard's mesh product caused any of the alleged injuries. In addition, several of Plaintiffs' legal theories lack evidentiary support. Accordingly, this Court should enter summary judgment in Bard's favor and against Plaintiffs on all of their claims.

## FACTUAL BACKGROUND

Mrs. Wheeler, a resident of Illinois, first began experiencing symptoms of urinary stress incontinence in her mid-thirties. (Rule 56.1 Stmt. of Undisp. Material Facts ("Rule 56.1 Stmt."), ¶¶ 1, 5.) By 2009, her symptoms became progressively worse, to the extent that if she laughed, ran, jumped, played baseball, rode horses, sneezed or relaxed too much she would suffer from incontinence. (*Id.* ¶¶ 5-6.) In November of 2009, Plaintiff sought treatment for her urinary issues from Dr. Charles Feinstein, M.D., a gynecologist at the Faycor N.A. Surgical Facility in Chicago, Illinois. (*Id.* ¶ 6.) Dr. Feinstein diagnosed Plaintiff with urinary incontinence, incompetent mid-urethral sphincter, and severe anterior pelvic organ prolapse/cystocele, and recommended a surgical treatment involving implantation of surgical mesh devices. (*Id.* ¶ 7.)

On November 19, 2009, Plaintiff met with Dr. Feinstein to discuss the risks of the proposed procedure. (*Id.* ¶ 8.) Dr. Feinstein was familiar with the risks of mesh products, discussed those

risks with Plaintiff, and provided Plaintiff with a comprehensive, eight-page document ("Informed Consent") describing in detail those risks, including, among others: vaginal pain, dyspareunia, inflammation, perforation and erosion of the sling or graft, frequency, urgency, de novo urgency incontinence, exposure of the mesh through the vaginal mucosa, and additional surgeries, including "to relax the sling, or cut the sling, or remove the sling and . . . further surgery in the future to replace the sling with a new one." (*Id.* ¶¶ 9-22.) Plaintiff signed and initialed every page of the Informed Consent on November 19, 2009. (*Id.* ¶ 10.)

On October 20, 2008, the FDA issued a Public Health Notification: Serious Complications Associated with Transvaginal Placement of Surgical Mesh in Repair of Pelvic Organ Prolapse and Stress Urinary Incontinence ("2008 FDA Notification"). (*Id.* ¶ 16.) Prior to her November 2009 surgery, Plaintiff expressly acknowledged that she was "aware that the FDA has issued a Black Box Warning about using Mesh in the human body." (*Id.* ¶¶ 10, 14.) Dr. Feinstein likewise confirmed that prior to and at the time of Plaintiff's November 30, 2009 surgery, he was aware that all of Plaintiff's claimed injuries, including vaginal pain, dyspareunia, inflammation, and erosion of mesh, were known potential risks or complications attendant with the implantation of the mesh products. (*Id.* ¶¶ 17-20.)

On November 30, 2009, Dr. Feinstein implanted in Plaintiff a mid-urethral sling ("Aris Tape") manufactured by Coloplast and performed an anterior pelvic organ prolapse-cystocele repair using another mesh product. (*Id.* ¶ 23.) Dr. Feinstein noted in his records that he performed a cystocele repair using an "Avaulta Repair System from BARD" ("Avaulta") but did not recollect which type of Avaulta he used. (*Id.* ¶ 24.) Prior to Plaintiff's surgery, Dr. Feinstein, also reviewed the Instructions for Use for Avaulta. (*Id.* ¶ 21.)

Plaintiff admitted under oath that she first experienced symptoms of the bodily injuries she attributes to the implantation of the pelvic mesh products in "February 2010" as she "did not recover from the initial surgery." (*Id.* ¶ 26.) Plaintiff's medical records further confirm that within three months of her November 30, 2009 surgery, Plaintiff indeed experienced symptoms of the bodily injuries of which she was warned by Dr. Feinstein as potential complications of mesh products. (*Id.* ¶¶ 27-28, 30-33.)

Over two years later, on April 30, 2012, Plaintiffs filed their Short Form Complaint directly into *C. R. Bard, Inc., Pelvic Repair System Products Multi-District Litigation 2187* ("Bard MDL"), alleging injuries from two separate mesh products: Aris Tape manufactured by Coloplast and the "Avaulta Repair System from BARD." (*Id.* ¶ 37.) Plaintiffs thereafter settled their claims against Coloplast and voluntarily dismissed or otherwise resolved all claims against the remaining defendants, and now only pursue this case against Bard. (*Id.* ¶¶ 40-42.)

On December 4, 2014, Plaintiff was implanted with yet another mesh sling, a TVT Exact manufactured by Ethicon. (*Id.* ¶ 50.) On December 3, 2019, the case was remanded from Bard MDL to this Court. [ECF No. 101.] This Court directed the parties to re-brief Bard's motion for summary judgment. [ECF 127.]

## APPLICABLE LAW

In actions filed directly into an MDL, like the instant one, the Courts apply the choice of law rules of the "originating jurisdiction," defined as the state in which the plaintiff was implanted with the product. *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013) ("Indeed, the prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated."). Because Plaintiffs filed their Complaint directly in the MDL, the "originating jurisdiction" is Illinois, the state in which Plaintiff

alleges to have been implanted with the mesh products. Therefore, this Court should apply the choice of law rules of Illinois.

Illinois has adopted the most-significant-relationship test as enumerated in the Restatement (Second) of Conflict of Laws. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154-55 (2007). Under that test, courts consider the following factors in choosing the applicable law: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *Townsend*, 227 Ill. 2d 147 at 160.

Applying these factors to the facts in this case, it is clear that Illinois is the state with the most significant relationship to Plaintiffs' claims. Mrs. Wheeler was an Illinois resident at the time she was allegedly implanted with her mesh products and remains an Illinois resident today. (Rule 56.1 Stmt., ¶ 1.) She was implanted with the mesh products in Illinois and sustained her alleged injuries in Illinois. (*Id*. at 4.) Accordingly, this Court should apply the substantive law of Illinois to the claims asserted by Plaintiffs in this action. *See Townsend*, 227 Ill. 2d 147 at 160.

## **SUMMARY JUDGMENT STANDARD**

"Federal courts sitting in diversity apply state substantive law and federal procedural law under the eponymous *Erie* doctrine." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015) (internal quotations and citations omitted). To prevail on summary judgment, Bard must demonstrate the absence of disputed issue of material facts entitling it to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

In deciding a motion for summary judgment, the Court draws any permissible inference in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Nevertheless, the nonmoving party must come forward with "concrete

- 4 -

evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts [and] must demonstrate the presence of a *genuine* factual issue for trial." *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 304 (7th Cir. 1996) (internal citations omitted) (emphasis in original). The mere existence of only a "scintilla of evidence in support" of the nonmovant's position is insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Conley v. Vill. Of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000).

## ARGUMENT AND AUTHORITIES

**I.      BARD IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFFS' CLAIMS BECAUSE THEY ARE TIME-BARRED.**

Plaintiffs' claims are time-barred. A plaintiff must bring an action for personal injury and product liability claims within two years of the date on which the cause of action accrued. 735 ILCS 5/13-202; *Lowe v. Ford Motor Co.*, 313 Ill. App. 3d 418, 420 (1st Dist. 2000). "As a general rule, a cause of action for personal injuries accrues when the plaintiff suffers injury." *Golla v. Gen. Motors Corp.*, 167 Ill. 2d 353, 360 (1995). The statute of limitations begins to run "even though the full extent of those injuries may not have been immediately apparent." *Id.* at 368.

Here, Plaintiff was implanted with the mesh products on November 30, 2009, and admitted under oath that she first experienced symptoms of the bodily injuries she attributes to the implantation of the pelvic mesh products in "February 2010" as she "did not recover from the initial surgery." (Rule 56.1 Stmt., ¶¶ 23, 26.) Accordingly, the two-year statute of limitation began to run, at the latest, in February 2010. Yet, Plaintiffs did not file their Complaint until April 30, 2012, approximately two and a half years after the implant surgery, and over two years after Mrs. Wheeler allegedly suffered her injuries. (*Id*. at ¶ 37.) Thus, all of Plaintiffs' claims are facially

time-barred and the Court should enter summary judgment in Bard's favor. *See Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 766–67 (S.D. Ill. 2010) ("where the undisputed facts clearly show that a plaintiff's cause of action is untimely, it is for the court to decide as a matter of law that the statute of limitations has run") (citations omitted).

Plaintiffs cannot salvage their facially time-barred claims by invoking the discovery rule. Illinois Courts have adopted the discovery rule to "prevent the unfairness of charging the plaintiff with knowledge of facts which were 'unknown and inherently unknowable.'" *Golla,* 167 Ill. 2d at 367 (citations omitted); *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 28 (applying discovery rule "because the state of our scientific knowledge [was] as yet inadequate to unearth" a causal link between injuries and the product). In such situations, "[t]he statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox Coll. v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981). "However, the term 'wrongfully caused', does not mean knowledge by plaintiff of a specific defendant's negligent act or knowledge that an actionable wrong was committed; rather, a person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Caywood v. Gossett*, 382 Ill. App. 3d 124, 130 (1st Dist. 2008) (citations omitted).

Here, the undisputed evidence shows that Plaintiff knew of her injuries, and knew or should have known they were allegedly wrongfully caused by February 2010—over two years before they filed their Complaint. First, Plaintiff was still leaking urine while coughing. (Rule 56.1 Stmt., ¶¶ 27, 28.) During her post-operative visit on December 28, 2009, Plaintiff reported nocturia, incontinence with coughing and sneezing, using 3 pads per day that were wet to soaked with

discharge. (*Id.* ¶ 30.) Dr. Feinstein also noted positive vaginal discharge. (*Id.* ¶ 31.) At a post-op visit on January 5, 2010, Mrs. Wheeler reported nocturia, incontinence, using 2-3 pads per day that were soaked, and Dr. Feinstein noted vaginal discharge. (*Id.* ¶ 32.) On January 18, 2010, Mrs. Wheeler called Dr. Feinstein complaining of "something pulling (7 wks)" while sitting down. (*Id.* ¶ 33.) On February 22, 2010, Mrs. Wheeler attended a post-op visit with Dr. Feinstein's office and reported pain in the front of the vagina with intercourse, and pain all day, especially worsening at the end of the day. (*Id.* ¶ 35.) Plaintiff complained of pain on her right side and reported having pain since her November 30, 2009 surgery. (*Id.* ¶ 36.)

These exact alleged symptoms or injuries were known potential complications of pelvic mesh products of which Dr. Feinstein warned Plaintiff before her surgery. (*Id.* ¶¶ 8-22.) Indeed, not only did Dr. Feinstein discuss those risks with Plaintiff, but he also provided Plaintiff with a comprehensive, eight-page Informed Consent documenting those discussions and describing in detail the risks of the proposed surgery and mesh products. (*Id.* ¶ 10.)

Further, more than a year before Plaintiff's surgery, on October 20, 2008, the FDA issued the 2008 FDA Notification, which further warned, among other things, that "[t]he most frequent complications [of surgical mesh devices used to repair POP and SUI] included erosion through vaginal epithelium, infection, pain, urinary problems, and recurrence of prolapse and/or incontinence . . . bowel, bladder, and blood vessel perforation during insertion . . . vaginal scarring and mesh erosion . . . significant decrease in patient quality of life due to discomfort and pain, including dyspareunia." (*Id.* ¶ 16.) Prior to her November 2009 surgery, Plaintiff expressly acknowledged that she was "aware that the FDA has issued a Black Box Warning about using Mesh in the human body." (*Id.* ¶¶ 10, 14.)

As a result, undisputed evidence shows that within three months after her implant surgery on November 30, 2009, Mrs. Wheeler possessed sufficient information to put her on notice that her alleged injuries were allegedly "wrongfully caused" by her mesh products. *See, e.g., Mecham v. C. R. Bard, Inc.,* No. 2:19-cv-00750-JNP, 2020 U.S. Dist. LEXIS 93671, at \*24 (D. Utah May 27, 2020) (finding, under similar circumstances that a "reasonably diligent plaintiff would have been on inquiry notice that the Defendant's product was the alleged cause of [her] injuries.")[1] Because the two-year statute of limitation began to run, at the latest, in February 2010 and Plaintiffs did not file their Complaint until April 30, 2019, all of Plaintiffs' claims are time-barred.[2]

## II. BARD IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFFS' CLAIMS DUE TO LACK OF A TRIABLE ISSUE OF CAUSATION.

Plaintiffs' claims also fail because Plaintiff cannot raise a genuine issue of material fact with respect to the alleged causal relationship between her injuries and Bard's product. "Under Illinois law, plaintiffs in product liability actions must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 604 (7th Cir. 2016) (citations and quotation marks omitted). A causal relationship requires showing that "a defendant's conduct is a material

---

[1] *Mecham*, like the instant action, was originally filed into the Bard MDL and has been remanded to the District of Utah. Bard moved for summary judgment on the plaintiff's claims as time-barred under the applicable two-year statute of limitations under the Utah Product Liability Act ("UPLA"). *Id.* at \*4. Similar to Illinois law, the UPLA only requires "inquiry notice" and the plaintiff need not have a "confirmed diagnosis about the causal relation to trigger the running of the statute of limitations." *Id.* at \*20. The Court concluded that the plaintiff's claims were time-barred because a "reasonably diligent plaintiff would have been on inquiry notice that the Defendant's product was the alleged cause of Mrs. Mecham's injuries[.]" *Id.* at \*21-22. The Court noted that "[e]ven a basic inquiry concerning Mrs. Mecham's symptoms would have led to two Food and Drug Administration (FDA) reports warning about the potential harms of pelvic surgical mesh." *Id.* \*23. Here, Mrs. Wheeler did not even need to do such a basic inquiry as the information about the FDA Notification was included in the Informed Consent, which Plaintiff received from Dr. Feinstein and signed. (Rule 56.1 Stmt., ¶¶ 10, 14.)

[2] Plaintiff's assertion that she did not attribute her injuries to the mesh products until "[a]pproximately June 28, 2010, during an appointment with Dr. Feinstein who advised it would be necessary to remove the mesh," is immaterial. The discovery rule only requires inquiry notice, "when a plaintiff has knowledge of an injury, an accurate medical diagnosis is irrelevant to the issue of whether a plaintiff is on notice of its exact wrongful cause." *Orso v. Bayer Corp.*, No. 04 C 0114, 2009 WL 249235, at \*5 (N.D. Ill. Feb. 2, 2009).

element and substantial factor in bringing about the injury" and that "absent that conduct, the injury would not have occurred." *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004) (internal citations omitted); *Bermudez v. Martinez Trucking*, 343 Ill. App. 3d 25, 29 (1st Dist. 2003) (to establish proximate cause, Plaintiff has to "affirmatively and positively show" that defendant's alleged conduct caused Plaintiff's injuries).

The testimony of an expert witness is required to establish medical causation. *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 501 (1st Dist. 2010) ("Because products liability actions involve specialized knowledge or expertise outside of a layman's knowledge, the plaintiff must provide expert testimony on the standard of care and a deviation from that standard to establish either of these propositions."); *see also Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 983 (N.D. Ill. 2010), aff'd, 659 F.3d 584 (7th Cir. 2011) ("products liability cases that involve complex products beyond a lay jury's understanding require expert testimony.") Without admissible expert testimony on causation, Plaintiffs cannot survive a summary judgment. *See Grant v. Chemrex, Inc.*, No. 93 C 0350, 1997 WL 223071, at *12 (N.D. Ill. Apr. 28, 1997) (granting summary judgment where there was no expert testimony on causation).

In this case, Plaintiffs designated Dr. Bruce Rosenzweig, M.D. and Colleen M. Fitzgerald, M.D. to offer causation opinions relating to the alleged injuries sustained by Mrs. Wheeler. (Rule 56.1 Stmt., ¶ 47.)[3] However, as discussed more fully in Bard's pending Motions to Limit or Exclude Certain Opinions and Testimony of Bruce Rosenzweig, M.D. [ECF 91] and Colleen M. Fitzgerald, M.D. [ECF 89][4], their causation opinions lack scientific basis, are unreliable, and

---

[3] While Plaintiffs also designated Dr. Feinstein as a non-retained expert witness, Dr. Feinstein is not offering any causation opinions, and in fact testified that it is not his opinion, and he was not going to testify in this case, that Bard's Avaulta "caused or contributed at all" to any of Mrs. Wheeler's alleged injuries. (Rule 56.1 Stmt., ¶ 48.)

[4] Bard's Motions to Exclude have been fully briefed. Bard filed its Motions and Accompanying Memorandums of Law on November 4, 2019 [ECF 90, 92]. Plaintiffs' filed their Oppositions on November 18, 2019 [ECF 94, 95], and Bard filed its Reply briefs on November 25, 2019 [ECF 99, 100].

should be excluded. Among many problems, Dr. Rosenzweig and Fitzgerald's opinions are based on an unreliable differential diagnosis as neither Dr. Rosenzweig nor Dr. Fitzgerald properly included and ruled out Plaintiff's pre-existing conditions and other mesh products as potential causes of her alleged injuries. Their differential diagnosis is particularly unreliable in this case because even Dr. Feinstein does not know for certain which pelvic organ prolapse mesh was *actually* implanted in Mrs. Wheeler.[5] (Rule 56.1 Stmt., ¶ 24.) And even assuming that a Bard product had been implanted in Mrs. Wheeler, Mrs. Wheeler indisputably was implanted with two additional mesh devices: the Coloplast Aris Tape and the Ethicon TVT Exact. (*Id.*, ¶¶ 23, 50.) Yet, Dr. Rosenzweig did not factor the Ethicon TVT Exact into his percentage of fault calculations, and Dr. Fitzgerald's differential diagnosis failed even to mention Mrs. Wheeler's endometriosis, ovarian tumor surgery, sarcoidosis, and current mesh implant as other causes—even to rule them out.

Dr. Rosenzweig and Dr. Fitzgerald's failure to factor in and rule out such obvious potential causes of Mrs. Wheeler's alleged injuries is fatal to their opinions. *See Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 774 (7th Cir. 2014) (finding that the expert's "failure to rule out obvious potential alternative causes is . . . fatal to [expert's] testimony.") Without such opinions, Plaintiffs have no admissible evidence to show that Bard's product caused their injuries, which is fatal to their claims. *See, e.g., Sherer-Smith v. C.R. Bard, Inc.*, No. 19-CV-903-JDP, 2020 WL 1470962, at *5 (W.D. Wis. Mar. 26, 2020) (excluding plaintiff's expert opinions on causation due to improper differential diagnosis and granting summary judgment in Bard's favor in a case

---

[5] Bard's expert witness Dr. Matthew Clark opined "to a reasonable degree of medical certainty that the prolapse mesh product placed by Dr. Feinstein in 2009 was not the Bard Avaulta product." While the product identification remains an issue of fact, which cannot be properly resolved on summary judgment and is not subject of this Motion, Plaintiffs' claims fail as matter of law for variety of other reasons. Bard reserves the right to dispute, if necessary, the product identification at trial.

recently remanded from Bard's MDL, where plaintiff's expert failed to consider plaintiff's other mesh products as potential causes of the alleged injuries).

### III. BARD IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FAILURE TO WARN CLAIMS BECAUSE MRS. WHEELER'S IMPLANTING PHYSICIAN KNEW OF THE RISKS AND COMPLICATIONS ATTENDANT WITH THE IMPLANTATION OF MESH PRODUCTS.

Plaintiffs assert claims for failure to warn under both strict liability (Count V) and negligence theories (Count I). Under the Illinois learned intermediary doctrine, however, manufacturers of medical devices have no duty to directly warn patients about a product's dangerous propensities. *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 430 (2002) ("[T]he manufacturer of a prescription medical device has a duty to warn [only] prescribing physicians or other health professionals who may prescribe the device of the product's known dangerous propensities."). Instead, a medical device manufacturer discharges its duty by warning the prescribing—or in this case, implanting—physicians, who "in turn, using their medical judgment, have a duty to convey any relevant warnings to their patients." *Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234, 238 (1996). Moreover, Illinois law is clear that a manufacturer has no duty to warn the prescribing or implanting physician of risks that are already known to the physician or the medical community at large. *Hansen*, 198 Ill. 2d at 430 ("A corollary of [the learned intermediary] doctrine is the principle that a prescription medical device manufacturer need not provide a warning of risks already known to the medical community."); *Proctor v. Davis*, 291 Ill. App. 3d 265, 277 (1st Dist. 1997) ("In Illinois, there is no duty to warn of a risk that is already known by those to be warned.").

Here, the undisputed evidence demonstrates that the implanting physician, Dr. Feinstein was fully aware that all of Plaintiff's claimed injuries, including vaginal and pelvic pain, dyspareunia, inflammation, and erosion of mesh, were known potential risks or complications attendant with the implantation of the mesh products. (Rule 56.1 Stmt., ¶¶ 17-20.) Dr. Feinstein

also reviewed the Instructions for Use for Avaulta prior to Plaintiff's implantation surgery, which further disclosed the risks of the device. (*Id.* ¶ 21.) Dr. Feinstein was also aware of the 2008 FDA Notification. (*Id.* ¶ 14.) Dr. Feinstein then communicated the risks to Plaintiff, in the form of a very detailed verbal and written informed consent process, including a detailed eight-page Informed Consent. (*Id.* ¶¶ 8-10.)

Dr. Feinstein's unequivocal testimony demonstrates that he was aware of all the potential risks and complications of which Plaintiffs now complain. Therefore, Plaintiffs' failure to warn claims fail as a matter of law. *See, e.g.*, *Hansen*, 198 Ill. 2d at 430.

## IV. PLAINTIFFS DO NOT OPPOSE THE ENTRY OF SUMMARY JUDGMENT ON THEIR CLAIMS FOR (1) BREACH OF EXPRESS AND IMPLIED WARRANTY, (2) MANUFACTURING DEFECT, (3) NEGLIGENT MARKETING, LABELING, PACKAGING, AND SELLING, AND (4) MR. WHEELER'S LOST PROFITS.

Plaintiffs have conceded they will not be pursuing their claims for breach of implied or express warranties (Counts V and VI), strict liability manufacturing defect (Count III), and Mr. Wheeler's lost profits claims. (Rule 56.1 Stmt., ¶ 46.) In addition, in their Opposition to Bard's Motion for Summary Judgment filed in the Bard MDL [ECF 93] ("MDL Opposition"), Plaintiffs failed to respond and did not oppose entry of summary judgment on their claim for negligent inspection, marketing, packaging and selling.

Because Bard's motion is unopposed as to these causes of action[6], the Court should grant Bard's motion and enter judgment in favor of Bard on Plaintiffs' claims for:

- Strict liability and negligent manufacturing defect claims (Counts I and III)[7];

---

[6] Should Plaintiffs attempt to change their position now, which they cannot do, Bard incorporates by reference all of its arguments set forth in its Memorandum of Law in Support of Its Motion for Summary Judgment filed on November 1, 2019 in Bard's MDL ("MDL MSJ"). [ECF 86].

[7] While Plaintiffs expressly conceded that they "will not pursue any causes of action for strict liability manufacturing defect," they also failed to respond to Bard's argument and failed to present any evidence in opposition to Bard's

- Breach of express warranty (Count V);

- Breach of implied warranty (Count VI);

- Negligent marketing, labelling, packaging, training and selling (Count I); and

- Mr. Wheeler's claim for lost profits (Count VII).

*See, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *see also Phongsa v. JPMorgan Chase Bank, N.A.*, 13 C 5573, 2014 WL 2510203, at *2 (N.D. Ill. June 3, 2014) ("If [a court is] given plausible reasons for dismissing a complaint, [the court is] not going to do the plaintiff's research and try to discover whether there might be something to say against the defendant's reasoning.") (citing *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999)).

## V. MRS. WHEELER'S LOST PROFITS CLAIM IS PROCEDURALLY BARRED AND FAILS DUE TO LACK OF EVIDENCE.

Although Plaintiffs expressly conceded their claim for Mr. Wheeler's alleged lost profits, Plaintiffs, in their MDL Opposition, endeavored to "preserve" a claim "for lost profit damages as it relates to Mrs. Wheeler. (MDL Opp., at 2, n. 1.) Such an attempt to preserve a claim, by way of footnote in a response brief, that was never asserted in the first instance, fails for several reasons.

First, Mrs. Wheeler never asserted a claim for lost profits, and never disclosed in her Plaintiff Fact Sheet, written discovery responses, or her deposition testimony that she was pursuing such claim. (Rule 56.1 Stmt., ¶ 44.) As a result, Mrs. Wheeler's attempt to preserve a claim she failed to assert is improper and procedurally barred.

Second, a footnote in a response brief to a motion for summary judgment is not a proper procedural mechanism to belatedly add new claims. It is an "axiomatic rule" that a plaintiff "may

---

Motion on the negligent manufacturing defect claim. As a result, Plaintiffs' negligent manufacturing defect claim should be dismissed as well.

not amend [her] complaint in [her] response brief." *Pirelli Armstrong Tire Corp. Retiree Med Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (citations omitted). Moreover, the time for amending pleadings has already passed long ago.

Third, even if Mrs. Wheeler could belatedly add a new claim through a footnote in a response brief, weeks after the close of discovery (which she cannot), she still failed to present any evidence, either documentary, testimonial or expert, to support her purported lost profits claim. Indeed, at no point during this case has Mrs. Wheeler presented any evidence that she suffered any lost profits, provided any calculation of lost profits, or asserted that such lost profits, if any, could be somehow traced to Bard's product. As a result, she cannot prove any lost profits to a "reasonable certainty." *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631-37 (7th Cir. 2007) (affirming entry of summary judgment for defendants on plaintiff's lost profit claims because plaintiff "has failed to present, on this record, a reasonable basis for the calculation of any damages . . .").[8] Thus, the Court should deny Mrs. Wheeler's belated attempt to preserve her lost profits claim, and enter summary judgment in favor of Bard on such purported claim.

## VI. PLAINTIFFS' PUNITIVE DAMAGES CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs' claim for punitive damages fails for at least two reasons. First, Plaintiffs cannot recover punitive damages in the absence of actual or compensatory damages. *See, e.g., Guy v. Duff & Phelps, Inc.*, 628 F. Supp. 252, 260 (N.D. Ill. 1985) (granting defendants' motion for summary judgment and explaining that, with respect to the plaintiff's Illinois common law tort claims, punitive damages could not be awarded in the absence of actual or compensatory damages);

---

[8] Insofar as Mrs. Wheeler's purported lost profits claim, if any, relates to the purported lost profits from the family insurance business, then such claim is indistinguishable from and fails for the same reason as did Mr. Wheeler's lost profit claim. (*See* Bard's MDL MSJ, incorporated hereto by reference [ECF 86].) Because Plaintiffs failed to respond to Bard's Motion seeking summary judgment on this claim, they waived any arguments in opposition, and cannot escape summary judgment by "preserving" such claim. *See Bonte*, 624 F.3d at 466 ("Failure to respond to an argument . . . results in waiver.").

*Tonchen v. All-Steel Equip., Inc.*, 13 Ill. App. 3d 454, 465 (2d Dist. 1973) (punitive damages "may not be awarded in the absence of actual damages"); *Kemner v. Monsanto Co.*, 217 Ill. App. 3d 188, 199 (5th Dist. 1991) ("Illinois does not recognize a cause of action for punitive damages alone.") Plaintiffs are not entitled to any actual or compensatory damages because all of their claims are time-barred and fail for other reasons. As a result, their claims for punitive damages likewise fails.

Second, punitive damages are not appropriate in this case, as Plaintiffs have failed to adduce any evidence of conduct or actions on Bard's part, or on the part of any of its employees or agents, in any way rising to the level of heightened culpability required to impose exemplary damages under Illinois law. *See Kelsay v. Motorola, Inc.,* 74 Ill. 2d 172, 186 (1978) (punitive damages are recoverable only "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others"); *Hagen v. Richardson-Merrell, Inc.*, 697 F. Supp. 334, 338 (N.D. Ill. 1988) (holding that, in the context of product liability cases, punitive damages are only recoverable if the defendant's conduct reflected "a flagrant indifference to the public safety"). Because Plaintiffs cannot point to any evidence satisfying the heightened culpability required for exemplary damages in Illinois, Bard is entitled to summary judgment on Plaintiffs' punitive damages claim.[9]

## **CONCLUSION**

For all of the foregoing reasons, Bard respectfully requests that the Court grant summary in its favor on all of Plaintiffs' claims. [10]

---

[9] For all of these reasons, and to avoid doubt, Bard expressly reserves and does not waive its right to further contest punitive damages before, during, and, if necessary, after trial.

[10] Because all of Mrs. Wheeler's claims fail, Mr. Wheeler's derivative loss of consortium claim likewise fails as a matter of law. *Ramirez v. City of Chicago*, 2019 IL App (1st) 180841, ¶ 20.

Dated: June 26, 2020

Respectfully submitted,

**DEFENDANT C. R. BARD, INC.**

By: _/s/ Lori G. Cohen_____
          One of Its Attorneys

Lori G. Cohen
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2386 (facsimile)
cohenl@gtlaw.com

Gregory E. Ostfeld (ARDC No. 6257163)
Martin Kedziora (ARDC No. 6300162)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 476-5039
ostfeldg@gtlaw.com
kedzioram@gtlaw.com

_Counsel for Defendant C. R. Bard, Inc._

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 26, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

*/s/ Lori G. Cohen*
Lori G. Cohen