IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE WHEELER and DOUGLAS WHEELER, | |
| Plaintiffs, | Case No. 1:19-cv-08273 |
| v. | Honorable John J. Tharp, Jr. |
| C. R. BARD, INC., | |
| Defendant. | |

**DEFENDANT C. R. BARD, INC.'S**
**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant C. R. Bard, Inc. ("Bard"), by its attorneys, and pursuant to Fed. R. Civ. P. 56, Local Rule 56.1, and this Court's Standing Order regarding summary judgment practice, submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment[1]:

**Parties, Jurisdiction, And Venue**

1. Plaintiffs, Christine Wheeler ("Plaintiff" or "Mrs. Wheeler") and Douglas Wheeler ("Mr. Wheeler", and together with Mrs. Wheeler, the "Plaintiffs"), are Illinois residents. (Plaintiff's Amended Short Form Complaint, December 25, 2012, ECF 13 ("SFC"), attached hereto as Exhibit A, ¶ 4.)

2. Bard is a New Jersey corporation with its principal place of business in New Jersey (Master Long Form Complaint and Jury Demand ("MC"), September 26, 2012, MDL 2187 ECF 352, attached hereto as Exhibit B, ¶ 3; C. R. Bard, Inc.'s Answer and Affirmative Defenses to

---

[1] Should the Court wish to review unredacted copies of the Exhibits, Bard will provide unredacted copies to the Court and/or file them under seal, as appropriate.

Plaintiffs' Master Long Form Complaint and Jury Demand ("Answer to MC"), September 26, 2012, MDL 2187 ECF 355, attached hereto as Exhibit C, ¶ 3.)

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties, and Plaintiffs are seeking damages in excess of $75,000.00, exclusive of interest and costs. (Ex. B, MC, ¶ 6; Ex. C, Answer to MC, ¶ 6.)

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Mrs. Wheeler, an Illinois resident, was implanted with the products at issue and received treatment for her alleged injuries in Cook County, Illinois. (Amended Plaintiff Fact Sheet, June 21, 2019 ("PFS"), attached hereto as Exhibit D, § I.4-I.5.)

**Plaintiff's Pre-Existing Symptoms**

5. Mrs. Wheeler first began experiencing symptoms of urinary stress incontinence in her mid-thirties and the symptoms became progressively worse, to the extent that if she laughed too hard, ran, jumped, played baseball, rode horses, sneezed or relaxed too much she would suffer from incontinence. (Deposition of Christine Wheeler, July 11, 2019 ("Wheeler Dep."), attached hereto as Exhibit E, 52:1-5; 54:2-8.)

6. In November 2009, Plaintiff sought treatment for her urinary issues from Dr. Charles Feinstein, M.D., a gynecologist at the Faycor N.A. Surgical Facility in Chicago, Illinois. (Ex. D, PFS, § II.1.)

7. In November 2009, Dr. Feinstein diagnosed Plaintiff with urinary incontinence, incompetent mid-urethral sphincter, and severe anterior prolapse/cystocele. (Deposition of Charles Feinstein, M.D., August 7, 2019 ("Feinstein Dep."), attached hereto as Exhibit F, 14:1-14:13; Ex. E, Wheeler Dep., 56:9-11.)

**Informed Consent and Dr. Feinstein's Knowledge of Risks**

8. Prior to her November 30, 2009 surgery, Plaintiff met with Dr. Feinstein to discuss the risks of the proposed procedure. (Ex. F, Feinstein Dep., 121:24-122:12.)

9. Prior to her November 30, 2009 surgery, Dr. Feinstein provided Plaintiff with the documents (the "Informed Consent") detailing the risks of the proposed treatment. (Ex. F, Feinstein Dep., 121:24-122:12; Informed Consent, Nov. 19, 2009, attached hereto as Exhibit G.)

10. Plaintiff initialed every page of the Informed Consent and signed the Informed Consent on November 19, 2009. (Ex. G, Informed Consent; Ex. E, Wheeler Dep., 71:19-73:5.)

11. The Informed Consent states, in part:

> I have explained my enclosed recommended procedure to the patient in great detail for the treatment of her stress incontinence and/or cystocele. I have also explained that this is not her only alternative, but she has other options, both more conservative and also more aggressive. I have explained all these alternatives to the patient in great detail.
>
> 1 have explained to the patient their success rates, failure rates, reasons for success and reasons for failure, complications and their rates of' occurrence. I explained the reasons why additional surgery after the original surgical procedure may be needed, and explained the possible affects [sic] of the surgery on her sexuality.
>
> I have explained to the patient about the FDA BLACK BOX WARNING - that the more mesh used in a patient, the more likely to have complications such as penetrations, perforations, exposures or erosions of the suture line, most of which are easily taken care of when identified.
>
> The patient has verbalized complete understanding and asked a number of excellent questions that I have tried to answer completely to the best of my ability.

(Ex. G, Informed Consent, 1.)

12. The Informed Consent states, in part[2]:

> There is a total 95% Improvement rate with incontinence surgery: total cure rate of incontinence (no pads at all), with and [sic] additional 10% significantly improved rate ( eg: going from three wet pads/day to one moiste [sic] pad/day).

---

[2] Typographical and formatting errors in the original.

3

> I also explained, especially if there is cystocele surgery at the same time, there can be up to a 10% erosion rate where the skin incision can open up, and or the mesh can show through the skin, even for years in the future, which may require, additional suturing, or excision of a part of the mesh, or other procedures, even years after the procedure.
>
> It may be the natural evolution after initial presentation of weak muscle support of the pelvis --(stress urinary incontinence and/or cystocele), in years to come, to see further deterioration of the muscular support of the pelvis and the internal pelvic structures (bladder, uterus, cervix, rectum, and possibly intestines or GI tract). This may cause future presentation of cystocele, of rectocele, or cervical and apical prolapse, or of uterine prolapse, or of enterocele prolapse, or a combination of all the above.
>
> All this means, that there is a possibility that there may he further surgery needed in the future for continued deterioration of the muscular pelvic floor.
>
> I reviewed with her that there can be a 30% recurrence of Cystocele, even years after repair.
>
> The patient verbalized understanding of all instructions and expressed willingness to come in in [sic] the near future for corrective surgery.

(Ex. G, Informed Consent, 2.)

    13.    Informed Consent contains a "Risks of Complications" section, which states:

> I am aware of the risks of perforation and erosion of the sling or graft, either through the vaginal incision or through any part of the roof of the vagina, including deep inside the vaginal vault in the far lateral recesses. I am aware of the risk of erosion into the urethra, the bladder neck, the bladder, the contiguous organs surrounding the operative site, and the possibility of erosions, or perforations, into the great blood vessels surrounding the operative site. I understand that these complications, if they occur, will require further surgery to repair.
>
> I am also aware of the specific complications involving the suspension part of the procedure, which range from insufficient suspension to over suspension. Insufficient suspension will result in continued incontinence. Over-suspension of the urethra will result in urinary retention. I may suffer from frequency, urgency, or de novo urgency incontinence. I may suffer from slow stream, hesitancy in the onset of the urinary stream, weak stream, start and stop stream, increased post void residuals, increasing cystitis, repetitive urinary tract infections, urosepsis, and the need to urinate in abnormal positions to help change the angle of the urethra to assist emptying, I may suffer from frank urinary retention and require catheterization.

> I am aware that any of these complications will necessitate further surgery to relax the sling, or cut the sling, or remove the sling and may need further surgery in the future to replace the sling with a new one.

(Ex. G, Informed Consent, 4; Ex. F, Feinstein Dep., 109:2-110:18.)

14. The Informed Consent form contains a "Black Box Warning", which states:

> I am aware that the FDA has issued a Black Box Warning about using Mesh in the human body. They mention what has been known all along without any new or unknown problems, that is, that the more mesh or foreign material in the body, the more likely it is to have problems of some sort from the mesh. Problems like exposure of the mesh through the vaginal mucosa (skin) or through the incision. These exposures, perforations, or penetrations are usually handled easily by applying hormone cream to the area, or cutting out the small amount of mesh exposed, or resuturing the area, if need arises.

(Ex. G, Informed Consent, 5.)

15. The Informed Consent contains a "Sexual Functioning" section, which states:

> I am informed that although the bladder suspension procedure has nothing to do with specific sexual function, such function may be affected by vaginal surgery. I have mentioned having incontinence during sexual relations before this surgery, and for that reason has [sic] tended to avoid intercourse because of embarrassment. Female orgasm is a subject poorly understood. It is in part due to psychological factors. This may or may not be affected by any surgery on the vagina. However, surgery may induce scar tissue formation and this can affect sensation or cause lack of sensation in the vagina, Therefore [sic] the ability to experience an orgasm can be affected. The size of the vaginal opening and the depth of the channel may also be affected or changed by the surgery. Ease of penile penetration may be affected. Intercourse may be painful or cause bleeding.

(Ex. G, Informed Consent, 5; Ex. F, Feinstein Dep., 123:25-126:8.)

16. On October 20, 2008, the FDA issued a Public Health Notification: Serious Complications Associated with Transvaginal Placement of Surgical Mesh in Repair of Pelvic Organ Prolapse and Stress Urinary Incontinence. (http://wayback.archive-

it.org/7993/20170111190506/http://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/PublicHealthNotifications/ucm061976.htm, attached hereto as Exhibit H.)[3]

17. Prior to and at the time of Plaintiff's surgery on November 30, 2009, Dr. Feinstein was aware that vaginal pain was a known potential risk or complication attendant with the implantation of the mesh device. (Ex. F, Feinstein Dep., 112:8-113:13; 109:2-112:13.)

18. Prior to and at the time of Plaintiff's surgery on November 30, 2009, Dr. Feinstein was aware that dyspareunia was a known potential risk or complication attendant with the implantation of the mesh device. (*Id.* at 109:2-112:13.)

19. Prior to and at the time of Plaintiff's surgery on November 30, 2009, Dr. Feinstein was aware that mesh erosion was a known potential risk or complication attendant with the implantation of the mesh device. (*Id.*)

20. Prior to and at the time of Plaintiff's surgery on November 30, 2009, Dr. Feinstein was aware that inflammation was a known potential risk or complication attendant with the implantation of the mesh device. (*Id.*)

21. Prior to Plaintiff's implant surgery, Dr. Feinstein, reviewed the Instructions for Use for Avaulta. (*Id.* at 43:15-44:9; Avaulta Solo Synthetic Support System Instructions for Use, attached hereto as Exhibit I.)

22. Plaintiff conceded that before her November 30, 2009 surgery, she received information of instructions regarding: "[i]ndication of procedure, risk of complications, sexual

---

[3] The Court can take judicial notice of the FDA notification. *See Vincent v. Medtronic, Inc.*, 221 F. Supp. 3d 1005, 1007 (N.D. Ill. 2016) ("Executive and agency determinations are subject to judicial notice." (citing *Houston v. United States*, 638 Fed. Appx. 508, 514 (7th Cir. 2016))); *see also United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1062 n.14 (N.D. Cal. 2014) (taking judicial notice of FDA citizen petition).

function issues with surgery during recovery period, pregnancy issues with surgery, operative course and post-op care." (Ex. D, PFS, § II.3.c.)

**Plaintiff's November 30, 2009 Procedure**

23. On November 30, 2009, Plaintiff underwent a procedure during which Dr. Feinstein performed: (i) Mid-Urethral Sling Bladder using Coloplast Mentor Aris Tape ("Aries Tape"), (ii) anterior pelvic organ prolapse – cystocele repair using another mesh product, and (iii) cystoscopy and dilation. (Ex. F, Feinstein Dep., 8:7-14; 13:19-25; Ex. D, PFS, § II.1; Operative Report, Nov. 30, 2009, attached hereto as Exhibit J.)

24. Dr. Feinstein noted in his records that he performed cystocele using "Avaulta Repair System from BARD" but cannot recollect which type of Avaulta was used during the November 30, 2009 procedure. (Ex. F, Feinstein Dep., 201:12-202:3.)

25. Plaintiff's November 30, 2009 implantation procedure took place at Faycor N.A. Surgical Facility in Chicago, Illinois. (Ex. D, PFS, § II.1.)

**Plaintiff Experienced Symptoms of Alleged Injuries Within 3 Months of Her Procedure**

26. Plaintiff admitted under oath that she "did not recover from the initial surgery" and first experienced symptoms of the bodily injuries she attributes to the implantation of the pelvic mesh product(s) in "February 2010." (Ex. D, PFS, § II.6.b.)

27. Mrs. Wheeler, on a telephone follow-up call with Dr. Feinstein's office on December 2, 2009 reported she was still leaking urine while coughing, and had a few accidents. (Ex. F, Feinstein Dep., 156:24-157:10; Postoperative Follow-up Call Record, Dec. 2, 2009, attached hereto as Exhibit K.)

28. Mrs. Wheeler, on a telephone follow-up call with Dr. Feinstein's office on December 7, 2009 reported having puffy hands and sore joints pain due to the Vesicare, and

reported still leaking urine with coughing. (Ex. F, Feinstein Dep., 157:11-158:2; Postoperative Follow-up Call Record, Dec. 7, 2009, attached hereto as Exhibit L.)

29. Mrs. Wheeler did not attend a postoperative appointment with Dr. Feinstein scheduled for December 18, 2009. (Ex. F, Feinstein Dep., 130:9-11; 137:13-17.)

30. At a post-op visit on December 28, 2009 with Dr. Feinstein, Mrs. Wheeler reported nocturia, incontinence with coughing and sneezing, using 3 pads per day that were wet to soaked with discharge. (Ex. F, Feinstein Dep., 130:15-133:23; Postoperative Report, Dec. 28, 2009, attached hereto as Exhibit M.)

31. At a post-op visit on December 28, 2009, Dr. Feinstein noted positive vaginal discharge. (Ex. F, Feinstein Dep., 130:15-132:2; Ex. M, Postoperative Report, Dec. 28, 2009.)

32. At a post-op visit on January 5, 2010, Mrs. Wheeler reported nocturia, incontinence, using 2-3 pads per day that were soaked, and Dr. Feinstein noted vaginal discharge. (Ex. F, Feinstein Dep., 133:23-135:7; Postoperative Report, Jan. 5, 2010, attached hereto as Exhibit N.)

33. On January 18, 2010, Mrs. Wheeler called Dr. Feinstein complaining of "something pulling (7 wks)" while sitting down. (Ex. F, Feinstein Dep., 140:5-141:4; Postoperative Follow-up Call Record, Jan. 18, 2010, attached hereto as Exhibit O.)

34. Mrs. Wheeler did not attend a postoperative appointment with Dr. Feinstein scheduled for February 2, 2010. (Ex. F, Feinstein Dep., 137:13-17.)

35. On February 22, 2010, Mrs. Wheeler attended a post-op visit with Dr. Feinstein's office and reported pain in the front of the vagina with intercourse, and pain all day, especially worsening at the end of the day. (Ex. F, Feinstein Dep. 135:8-137:2; Postoperative Report, Feb. 22, 2010, attached hereto as Exhibit P.)

36. On May 25, 2010, Plaintiff complained of pain on her right side and reported having this pain since her November 30, 2009 surgery. (Ex. F, Feinstein Dep., 138:17-141:4; Progress Notes, May 25, 2010, attached hereto as Exhibit Q.)

**Plaintiffs' Complaint**

37. Plaintiffs filed their initial Short Form Complaint on April 30, 2012 directly into *C. R. Bard, Inc., Pelvic Repair System Products Multi-District Litigation 2187* ("Bard MDL"). (ECF 1.)

38. Plaintiffs filed their Amended Short Form Complaint on December 25, 2012. (Ex. A, SFC).

39. In their Short Form Complaint, Plaintiffs asserted claims against Bard, Sofradim Production SAS, Analytic Biosurgical Solutions, Mentor Worldwide LLC, Coloplast A/S, Coloplast Corp., Coloplast Manufacturing US, LLC, and Porges S.A. (Ex. A, SFC, ¶ 6.)

40. Plaintiffs settled their claims against Coloplast relating to alleged injuries caused by Aries Tape. (Ex. E, Wheeler Dep., 33:23-24; 109:17-16; ECF 39.)

41. Plaintiffs' claims against Porges S.A., Coloplast A/S and Coloplast Manufacturing US, LLC were terminated pursuant to Pretrial Order # 79 entered in MDL 2187. (MDL 2187, Pretrial Order No. 79.)

42. Plaintiffs' claims against Sofradim Production SAS, and Analytic Biosurgical Solutions were voluntarily dismissed. (ECF 27, 51.)

43. In their Short Form Complaint, Plaintiffs asserted the following claims based on corresponding counts in the Master Complaint: Negligence (Count I), Strict Liability – Design Defect (Count II), Strict Liability – Manufacturing Defect (Count III), Strict Liability – Failure to Warn (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count

9

VI), Loss of Consortium (Count VII), and Punitive Damages (Count VIII). (Ex. A, SFC, ¶ 14; Ex. B, MC.)

44. Mrs. Wheeler did not assert a claim for lost profits, and never disclosed in her Plaintiff Fact Sheet, written discovery responses, or her deposition testimony that she was pursuing such claim. (*See generally* Wheeler Dep.; PFS; Pl.'s Resp. to Def.'s Interrog. No. 4, December 6, 2019, attached hereto as Exhibit R.)

45. Plaintiff's alleged injuries include: "Chronic pelvic and vaginal pain, dyspareunia, pain during orgasm, inability to sit for prolonged periods of time, inability to lift heavy objects, hip pain, unable to swim or go horseback riding; unable to have proper pelvic exam and vaginal sex is impossible." (Ex. D, PFS, II.6(e); Ex. E, Wheeler Dep., 93:5-20, 95:19-96:5.)

46. Plaintiffs conceded they will not pursue any causes of action for strict liability manufacturing defect (Count III), breach of implied or express warranties (Counts V and VI), and "a claim for Mr. Wheeler's Lost Profits." (ECF 93, Plaintiffs' Memorandum in Opposition to Bard's Motion for Summary Judgment, Nov. 15, 2019, filed in Bard MDL).

47. Plaintiffs designated Dr. Bruce Rosenzweig, M.D. and Colleen M. Fitzgerald, M.D. to offer causation opinions relating to the alleged injuries sustained by Mrs. Wheeler. (Plaintiff's Designation and Disclosure of General and Case-Specific Expert Witnesses, August 19, 2019, attached hereto as Exhibit S).

48. Dr. Feinstein testified that it was not his opinion, and that he was not going to testify in this case, that Bard's Avaulta caused or contributed to any of Mrs. Wheeler's alleged injuries. (Ex. F, Feinstein Dep., 161:16-162:6).

**Plaintiff's Subsequent Treatment**

49. Plaintiff underwent four procedures to revise, trim and remove her mesh, on June 18, 2010, September 13, 2010, October 27, 2010, and March 2, 2011, respectively. (Ex. D, PFS, § II.5; PFS, Ex. B.)

50. On December 4, 2014, Plaintiff was implanted with another mesh sling, a TVT Exact manufactured by Ethicon, which remained implanted in Plaintiff as of the time of her deposition on July 11, 2019. (Ex. E, Wheeler Dep., 22:12-17; 88:7-11; 102:13-17.)

Dated: June 26, 2020                Respectfully submitted,
                                                    **DEFENDANT C. R. BARD, INC.**

                                                    By:  /s/ Lori G. Cohen
                                                          One of Its Attorneys

                                                  Lori G. Cohen
                                                  GREENBERG TRAURIG, LLP
                                                  Terminus 200
                                                  3333 Piedmont Road, N.E., Suite 2500
                                                  Atlanta, Georgia 30305
                                                  (678) 553-2100
                                                  (678) 553-2386 (facsimile)
                                                  cohenl@gtlaw.com

                                                  Gregory E. Ostfeld (ARDC No. 6257163)
                                                  Martin Kedziora (ARDC No. 6300162)
                                                  GREENBERG TRAURIG, LLP
                                                  77 West Wacker Drive, Suite 3100
                                                  Chicago, IL 60601
                                                  (312) 476-5039
                                                  ostfeldg@gtlaw.com
                                                  kedzioram@gtlaw.com

                                                  *Counsel for Defendant C. R. Bard, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

*/s/ Lori G. Cohen*
Lori G. Cohen
